SARAH A. STINSON, Administratrix, &c., of POPLIN STINSON, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

The duty which a railroad company, in the management of its trains, owes to a shipper of freight while lading the same, is the exercise of that ordinary care which every man owes to his neighbor, to do him no injury by negligence, while both are engaged in lawful pursuits.

THIS action was brought to recover damages for negligently causing the death of plaintiff's intestate, Poplin Stinson. It was tried at the Niagara Circuit in June, 1861, before Mr. Justice GROVER and a jury, and the plaintiff had a verdict for $2,500. On appeal to the Supreme Court the judgment was affirmed. On the trial it was proved, on the part of the plaintiff, that deceased and his son-in-law, Simon James, were returning from New York to Suspension Bridge with six horses, two of which belonged to deceased, and the residue to James; two buggies, one belonging to each, and several other articles of property, which they wished transported from Albany to Suspension Bridge. On the 3d day of July, 1860, arrangements were made with the freight agent of defendants at Albany, to ship the property early the following morning on a train which would leave about one P. M. The deceased and James came to the freight house about 9 o'clock of the morning of the 4th, where defendant had provided a car for said property, then standing on one of its tracks adjacent to and opposite the door of its freight house through which the property was to be loaded, and the defendant's workmen were there to assist in loading the same. A bridge was laid down from the freight house into the car. The horses were led in and secured at the ends of the car, and immediately after leading in the horses the bridge was taken up and not again put down. That deceased and James were in the act of moving one of the buggy bodies in the car to give more room for other articles, to do which James took hold of one side of the body in the car, and deceased stood

partially in the car door with' one foot in the freight house and the other in the car, in a stooping posture, having hold of the other side of the buggy body, and had just said to James "say when you are ready," as the cars and engine of defendant, which were backing down on the track, struck against the car with such force as to move it some seven feet, throwing James over and upon one of the buggies, and catching deceased between the car and the freight house and rolling him along some seven feet, and causing his immediate death. That the defendant's men had been gone from the freight house about five minutes when the collision occurred. That no bell, whistle or other signal was heard at the car, and no notice whatever was given to the deceased or James of the approach of any train. That from the position occupied by them, the approach of the engine and cars could not be seen before the collision. The space between the freight house and car was from nine to eleven inches. That the train which backed down had been standing on the track in a westerly direction, on or around a curve, but not in a position to be seen from the freight house or car where deceased was at work. On the part of the defendant, evidence was given in conflict with some facts of plaintiff's evidence, and tending to disprove negligence on its part; but none to show that any notice or signal of the approaching cars was given, except that the engineer testified "that on starting he supposed he rang his bell, from the fact that it was the custom and practice to do so continually." The employees of the company had been discharged because the day was a holiday. That deceased was found in an upright position, his head even with the top of the car between the grate door of the car and the building, with one foot through the grate door, the grate door nearly closing the doorway of the car, and was then dead.

The defendant also read in evidence the agreement signed by the station agent and James, purporting to be an agreement made between the company and James, and reciting in substance, that in consideration that the company would transport for said James six horses at reduced rates, said James agreed to take the risk of injuries which the horses

might receive from any cause while being transported; and containing the following provisions:

"And it is further agreed, that the said S. James is to load, transport and unload said stock at his own risk, the said New York Central Railroad Company furnishing the necessary laborers to assist. And it is further agreed between the parties hereto, that the persons riding free to take charge of the stock, do so at their own risk of personal injury from whatever cause."

At the close of the evidence the defendant asked the court to nonsuit the plaintiff on the ground that deceased came to his death by his own negligence and without fault of defendant, and on the further ground that the contract released the defendant from any action under the evidence given. The court refused to nonsuit, and the defendant's counsel excepted.

The defendant asked the court to charge, that under the evidence the defendant was exonerated from all responsibility for the injury. The court declined, and defendant excepted. The counsel for defendant also requested the court to charge, that deceased must have been without fault, and the negligence of defendant's employees, such as would have rendered them liable to indictment; the court declined so to charge, and defendant's counsel excepted. The court, amongst other things, charged the jury "that the release in the contract does not shield the defendant from action for negligence and neglect, if guilty of negligence and neglect which caused the death of deceased, and deceased was himself free from fault, negligence and neglect." To which charge defendant's counsel excepted.

The court further charged, that in order to make defendant liable in this case, the deceased must be without fault himself, and free from any negligence, wrongful act, neglect or default on his part, contributing or tending to contribute in any manner to the injury, and defendants and its employees must be guilty of negligence and wrongful act, neglect or default, causing the death of deceased. To which defendant excepted.

The court also charged that the contract did not cover the risk occasioned by collision with another train. To which defendant also excepted.

*A. P. Lanning*, for the appellant.

*Cyrus E. Daw*, for the respondent.

DAVIS, J.  The motion for nonsuit on the ground that deceased came to his death by his own negligence, was properly denied.  He was lawfully engaged in loading the car.  The contract required him to do this, the defendant furnishing laborers to assist.  The engine and train that caused his death were not in sight from the car or freight house where he was at work.  The train was not to leave for some hours, and there was nothing to indicate that extraordinary vigilance was demanded at his hands; nor was there any evidence to show any want of ordinary care in the manner in which he performed his work.  So far as the evidence on the part of defendant tended to show any negligence by deceased, the question was put to the jury in proper form by the court.

The question of defendant's negligence was also a proper one for the jury.  The freight despatcher gave the signal for the train to back down for the car which deceased was loading, without ascertaining that the lading was completed, and without giving the slightest notice or warning to the persons about the car.  It was his duty, I think, to have seen to it, before he ordered the train to be backed down, that the persons engaged in loading were not exposed to injury.

The evidence tended also to show that the train approached without ringing the bell or sounding the whistle, and with force sufficient to drive the standing car back several feet while crushing the deceased between it and the walls of the freight house.  The case was not, therefore, one to be taken from the jury on the question of negligence in any of its aspects.  The court gave to the jury correct instructions as to the degree of negligence requisite to charge the defendant.  It was not necessary that the negligence should be of a character that would render the servants of defendant indictable for crime.

But it is insisted that the contract between the parties, in reference to the use of the car, released the defendant from

all liability. Two clauses of the contract are relied upon as producing this result: 1st. That which provides that James is "to load, tranship and unload said stock *at his own risk*." The risk here provided for is of that injury to which the property is or may be exposed in process of loading and unloading. In respect to those acts, the contract devolves all responsibility on the shipper, as *principal*, in performing them, treating the laborers furnished by defendant as his assistants. The risk of personal injury from the animals themselves, or from his manner of loading or unloading them, or from any negligence of his assistants in doing those acts, is thrown upon him by the contract, because he is made the principal in performing them for his own benefit. But by no sound construction can this clause of the contract be held to include personal injuries which the party may sustain from external causes produced by the negligence of defendant. An injury caused by negligently running a train of cars upon him over which he has no control, while he is carefully performing the labor he is authorized to do, is not at all within the scope or meaning of this clause of the contract; 2d. That which provides "that persons riding free, to take charge of the stock, do so at their own risk of personal injury from whatever cause." The power of the company to make this contract must be conceded under the late decisions of this court on that subject. (*Buell* v. *N. Y. C. R. R.*, 25 N. Y., 442; *Smith* v. *Same*, 26 id. ——.) The fruits of this rule are already being gathered in increasing accidents through the decreasing care and vigilance on the part of these corporations, and they will continue to be reaped until a just sense of public policy shall lead to legislative restriction upon the power to make this kind of contracts. But it is clear that the rule referred to has no application to this case. The intestate was not "*riding free to take charge of the stock*." The journey had not commenced, nor had the train been formed that was to make it. He was in no sense a passenger "*riding free*" or otherwise. That relation had not begun, if it was designed to exist. There was nothing to show that deceased would have the right to ride free, or that he was

the person contemplated to do so. The contract entitled no one to ride; it simply stipulated for a contingency, which was that if any person should ride free to take charge of the stock, he should take all risks of personal injury while on the passage. It appears, from the cases above cited, that a ticket is issued to the person so riding, evidencing his right to ride without pay, and specially subjecting him to the risk of personal injury. The person thus riding may be the owner of the property, or any agent of his; and to him, whenever the trip commences, the contract applies. The only relation, therefore, upon the facts of this case, in which the deceased stood to the defendant was that of a shipper, loading his own property in one of defendant's cars, by authority from defendant. And the duty the company owed to him in the management of its trains was the exercise of that ordinary care which every man owes to his neighbor, to do him no injury by negligence while both are engaged in lawful pursuits, a duty which begins and ends in the maxim " *sic utere tuo ut non alienum laedas.*"

The charge of the court, " that the contract did not cover the risk occasioned by collision with another train," had reference to the particular collision that caused the death of the intestate, and was, therefore, not erroneous.

In my opinion, the judgment should be affirmed.

Judgment affirmed.

Judges PORTER and POTTER take no part in the decision.